PORTLAND TERMINAL COMPANY, APP'T, *vs.* CITY OF PORTLAND.

Cumberland. Opinion August 22, 1930.

*Edward W. Wheeler*, for appellant.
*Harry C. Wilbur*, for appellee.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, JJ. PHILBROOK, A. R. J.

PATTANGALL, C. J.    On exceptions. The appellant is a corpora-
tion, organized under the laws of Maine, having its principal place
of business in Portland, and on April 1, 1929 was operating and
has since continued to operate a railroad in this state. It was the
owner on April 1, 1929 of certain land and buildings located in
Portland and subject to taxation therein under the provisions of
Sec. 4, Chap. 10, R. S. 1916, which reads:

"The buildings of every railroad corporation or association,
whether within or without the located right of way, and its
lands and fixtures outside of its located right of way, are sub-
ject to taxation by the cities and towns in which the same are
situated, as other property is taxed therein, and shall be re-
garded as non-resident land."

The local assessors placed a valuation upon appellant's land
and buildings of $1,702,150 and assessed thereon a tax for the
year 1929 of $57,192.34 with an additional tax for street sprin-
kling of $436.29.

Included in the assessment was one parcel of land upon which a
filling station had been erected. This land was wholly within the
located right of way of the railroad and, hence, exempt from tax-
ation under the provisions of Sec. 25, Chap. 9, R. S. 1916, and Sec.
4, Chap. 10, R. S. 1916. The filling station erected thereon was the

property of one Foley, who occupied under a lease from appellant, which lease ran for ten years from May 1, 1928, unless sooner terminated by sixty days' written notice.

Appellant presented to the local assessors a petition for abatement of so much of the tax as was assessed on the land and filling station, urging that the one was exempt from taxation and that the other was the personal property of Foley and not taxable to it.

Abatement was refused, appeal taken and hearing had before a Justice of the Superior Court, with right of exceptions reserved. The appeal was sustained and exceptions were seasonably taken and allowed.

The right of appellant to be heard on appeal was strenuously resisted by appellee. Appellant had not, in accordance with the provisions of Sec. 74, Chap. 10, R. S. 1916, filed with the assessors a list of its taxable property, as required of resident owners, a condition precedent to an appeal from an assessment, by that class of taxpayers. But appellant asserted that because of the provisions of Sec. 4, Chap. 10, R. S., already quoted, it occupied the position of a non-resident taxpayer, so far as its real estate was concerned, and was not obligated to furnish such a list. The presiding Justice so construed the statute and found that appellant had the right of appeal and that the land being within the located right of way of the railroad was not liable to taxation.

The Court below also allowed the claim of appellant to an abatement of the tax erroneously assessed against it on the buildings owned and occupied by Foley but, no exception having been taken to this finding, it is not before us.

The issues presented here are (1) was appellant required to furnish a list of its property to the assessors as a condition precedent to its right to be heard on a petition for abatement? (2) Did the lease of the land to Foley constitute an alienation so that it ceased to be a part of the located right of way of the railroad and, therefore, taxable?

The answer to the first question depends wholly upon whether or not appellant, in so far as this land is concerned, is to be regarded as a resident or a non-resident owner.

If the former, having failed to file the required list of property,

and not having been excused by the assessors from so doing, it has no right to be heard in abatement and, assuming that the assessors acted in good faith, no other remedy is open to it. If overvaluation appears, having failed to meet the preliminary requirements of the statute, it must suffer the consequences. The law is well settled on that point.

If a resident taxpayer's property is overvalued, his only remedy is by abatement. *Stickney* v. *Bangor*, 30 Me., 404. If property not belonging to him is taxed to him, abatement is still his only remedy. *Hemingway* v. *Machias*, 33 Me., 445. If he is assessed for property lying in another town, abatement is the relief and the sole remedy of which he may avail himself. *Salmond* v. *Hanover*, 13 Allen, 119. All of these propositions are reaffirmed in *Gilpatric* v. *Saco*, 57 Me., 277. If property is taxed to him which does not belong to him it is merely an overvaluation of his property, a hardship which can only be remedied in one way, namely, by abatement. *Bath* v. *Whitmore*, 79 Me., 182. If the assessment is too large for any reason, either from including property that the taxpayer does not own or that is exempt from taxation or that can not lawfully be taxed, it is clearly a case of overvaluation, to be remedied by abatement. *Rockland* v. *Water Co.*, 82 Me., 188. And in default of having complied with the law requiring the filing a list of his property, he has no right to be heard in abatement proceedings. *Freedom* v. *County Commissioners*, 66 Me., 172.

Not so in the case of a non-resident owner. The provisions of Sec. 74, Chap. 10, R. S. 1916, requiring lists of property to be filed with the assessors as a condition precedent to an application for abatement do not apply to him. If his property is overvalued in any sense in which the word is used in the cases above cited he must be heard on petition for abatement and on appeal if assessors act adversely on his petition. Nor is he confined to abatement for relief. Other remedies are open to him. *Ware* v. *Percival*, 61 Me., 391 ; *McCrillis* v. *Mansfield*, 64 Me., 198.

The land within the located right of way of a railroad corporation is exempt from taxation. Unless the land in question had been alienated by the lease to Foley and hence ceased to be a portion of the railroad right of way, it was improperly and illegally included

in the assessment. But that would not avail appellant, if it is in the position of a resident owner, because no list of its property was filed with the assessors.

Its status in this respect depends entirely upon the meaning of the statutory provision that the real estate of a railroad company "shall be regarded as non-resident land."

Unless the phrase "non-resident land" is entirely meaningless it must be equivalent to "land of a non-resident." So interpreted Sec. 4, Chap. 10, R. S. 1916, would read, "The buildings of every railroad corporation or association, whether within or without the located right of way and its land and fixtures outside of its located right of way are subject to taxation by the cities and towns in which the same are situated, as other property is taxed therein and shall be regarded as land of a non-resident." That is to say shall be subject to the laws which govern the taxation of any non-resident's land.

It is urged that appellant is not a non-resident in that its principal place of business is admittedly in the City of Portland. But the statute provides that, irrespective of location, the land shall be "regarded" as non-resident land or land of a non-resident, thus conferring upon a railroad a non-resident status for the purpose of taxing its real estate.

This was the view of the Court below and we have no hesitation in affirming it.

One other question remains. Had this land ceased to be a part of the right of way by reason of the lease to Foley and therefore taxable regardless of whether it was the property of a resident or a non-resident owner? We think not. There certainly was no abandonment of the portion of the right of way occupied by the filling station. The lease to Foley was determinable at will by appellant, on sixty days' notice.

Appellee urges in its brief that appellant had no right to lease any part of its right of way for a purpose not incident to the operation of a railroad, that its act in this respect was *ultra vires*, that the lease was a nullity, and that "as the lessor could not convey, the lessee took nothing." If this view is correct there certainly was no alienation.

The cases cited and argument made by counsel for appellee are directed to the conclusion that appellant had no right to permit the occupation of any portion of its right of way by Foley or other proprietor of a filling station, such a structure not being necessary to its own use. That question is not before us.

The issue here is whether or not by the lease to Foley the land on which the filling station being temporarily, at least, used for other than railroad purposes may be said to have ceased to be a part of the right of way within the meaning of the tax statute.

Decisions from courts of other states are not helpful in arriving at a conclusion on this point unless they involve a construction of a similar statute. In many instances exemption depends upon whether or not the property in question is "necessarily used in operating a railroad" as in Michigan or "necessary for the exercise of the franchise of a railroad" as in Pennsylvania or "used for railroad purposes" as in New Jersey or "exclusively used in the operation of a railroad" as in Iowa.

Nebraska has a statute very similar to ours as had North Dakota, previous to the adoption of an amendment, designed to cover such a case as the one under consideration.

In *C. B. & Q. R. R. Co.* v. *Hitchcock*, 40 Neb., 781, construing the statute which made locally taxable "all real and personal property outside of the right of way and depot grounds" the court said, "It is contended by plaintiff that the character of the property and the use for which it is designed, not its precise location, is the test which should be applied in determining whether or not it is taxable by the local authorities but we can not so construe the section mentioned without ignoring the plain language of the provision. It would seem to have been the intention of the legislature to provide a fixed and arbitrary rule for the taxation by the state board of the property of railroad companies within their right of way."

Our statute is similarly explicit. Land "outside of its located right of way" is subject to local taxation. Land within the limits of the located right of way is not so taxable. It is stipulated in the record that the land in question "is within the limits of the located right of way of the appellant corporation." The use to which the

land is put is immaterial. The exemption from taxatiôn depends solely upon its location and that is not in dispute.

*Exceptions overruled.*