CHARLES A. PERRY AND FRANK C. PERRY, PETITIONERS
*vs.*
THE INHABITANTS OF THE TOWN OF LINCOLNVILLE

Waldo. Opinion, October 14, 1950.

*Charles A. Perry,* for petitioners.

*Clyde R. Chapman,* for respondents.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J. This appeal from assessment of tax comes before the Law Court on exceptions to the ruling of the Superior Court in Waldo County dismissing the appeal. See Revised Statutes (1944), Chapter 81, Sections 35-41.

The agreed facts are as follows: "The petitioners in compliance with a posted notice of the assessors of Lincolnville did send in a true and perfect list of all their taxable property for the year 1949; that they did this by sending said list by registered mail and that the same was mailed and received April 1st, 1949; that November 15th, 1949 the petitioners requested in writing an abatement on the grounds of being overvalued; that this petition was sent by registered mail to Ralph M. Hunt, chairman of the assessors, and receipted for November 16th, 1949; that November 19th, 1949, said chairman and all other assessors refused to abate the tax of your petitioners and notified them to that effect by registered mail; that to this decision your petitioners appealed to the County Commissioners' Court of Waldo County who heard the parties and rendered a decree in favor of your petitioners dated January 10th, 1950; that to this decree your petitioners seasonably appealed, said appeal being duly and seasonably entered at this April term."

Section 35 of Chapter 81, Revised Statutes of 1944, is as follows: "Before making an assessment, the assessors shall give seasonable notice in writing to the inhabitants by posting notifications in some public place in the town, or shall notify them, in such other way as the town directs, to make and bring in to them true and perfect lists of their polls and all their estates real and personal, not by law exempt from

taxation, of which they were possessed on the 1st day of April of the same year. If any resident owner after such notice, or any non-resident owner after being reasonably requested thereto by the assessors, does not bring in such list, he is thereby barred of his right to make application to the assessors or the county commissioners for any abatement of his taxes."

The Superior Court ruled that the petitioners failed to comply with this statute, and are barred; following the decision in *Inhabitants of Winslow, Petitioners* v. *County Commissioners of Kennebec*, 37 Me. 561, wherein the court says: "Before this mode of redress can be made available by any inhabitants he must personally carry in such list to the assessors and be ready to make oath to its correctness if required or make it appear to the commissioners that he was unable to offer such list at the time appointed." The petition was dismissed, and the petitioners filed exceptions.

The question for decision is the meaning of the words in Revised Statutes (1944), Chapter 81, Section 35, "to make and bring in," referring to the list of polls and estates asked for by the assessors in their notice to the inhabitants of the town. Do the words of this statute mean that the lists must be carried to the assessors *personally* by the individual taxpayer, or may they be filed with the assessors by any method?

The statute under consideration is one of our oldest. It was enacted in Maine by the first legislature and approved by the Governor on March 21, 1821. See Smith's Laws of Maine (1834), Volume 2, Chapter 116, Section 12. It continues through each revision of the statutes with only a very few and minor changes.

From the year 1715 to the year 1735, while Maine was a part of Massachusetts, the annual or special tax acts of Massachusetts provided that before making the assessment the assessors should call upon the inhabitants to "bring in

true and perfect lists of their polls and rateable estate." The bringing in of such lists was not made a condition to the right of abatement by the assessors or the courts until the year 1735, when a statute required the taxpayer "to give or bring in" lists to the assessors before application could be made to the court for any abatement. The statute in Massachusetts passed in the year 1785 was the model for our statute passed by the Maine Legislature in 1821. The case of *Sears* v. *Assessors of Nahant,* 205 Mass., 558 contains the history of this law.

The purpose of this statute, which requires notice by the assessors and the furnishing of lists by the taxpayer, is to assist the assessors in making a correct and complete assessment. If no lists are supplied, the assessors must use their own judgment on information they may otherwise obtain, and the owner of property has no right to make application for abatement if he files no lists. The lists are used by the assessors, in arriving at the amount of property and values, in making their assessments. By the notice, the assessors require these lists to be brought in within a time specified so that they can make a valuation, and if no lists are supplied they estimate according to their best information and belief. The assessors do not proceed in the assessment until the time has expired for bringing in the lists. The lists, if filed, are the basis of the assessment but are not conclusive. If a party intends, however, to put himself within his strict legal rights, and secure a right of appeal, he must file his list according to the notice given by the assessors. *Freedom* v. *County Commissioners,* 66 Me. 172; *Terminal Company* v. *Portland,* 129 Me. 264; *Powell* v. *Old Town,* 108 *Me.* 532; *Lambard* v. *County Commissioners,* 53 Me. 505; *Edwards* v. *Farrington,* 102 Me. 140; *Porter* v. *County Commissioners,* 5 Gray (Mass.) 365; *Orland* v. *County Commissioners,* 76 Me. 460. The lists, required under the notice and given to the assessors, are therefore to furnish correct information to the assessors, and if the assessors desire, they have the right to require the individual, who files the list,

to make oath to the same and to furnish other and additional information.

In the case at bar the petitioners admittedly furnished a list to the assessors of Lincolnville in compliance with a posted notice. They furnished it by sending the list by registered mail and the list was seasonably received by the assessors. The assessors made the assessment and upon petition refused to abate. On appeal to the County Commissioners of Waldo County, the commissioners made an abatement in a small amount which was not satisfactory to the petitioners. From this decision of the commissioners the petitioners appealed to the Superior Court, and the appeal was there dismissed because the list furnished was not *personally carried* to the assessors according to the statement in *Inhabitants of Winslow* v. *County Commissioners of Kennebec,* 37 Me. 561.

When the statute was first enacted, requiring the taxpayer to "bring in" his list, and at the time of the decision in the above case of *Winslow* v. *County Commissioners,* the rule that the individual making his list should *personally* carry his list to the assessors, was correct and proper. There was then no mail service to and in many communities, and no way to communicate with far separated inhabitants, except to travel to them in some manner over poor roads or trails. If the assessors desired to interrogate the taxpayer they could not do so without great trouble or inconvenience unless he personally brought in the lists, and was personally present and ready to make oath if oath was required, and ready to answer any pertinent inquiry. The reason for the rule has now ceased, and as Lord Coke expressed it many generations ago, *"Cessante ratione legis cessat et ipse lex."* When the reason of the law ceases, so does the law itself. Co. Litt 70 B 122 A: Bouvier's Law Dictionary, "Maxims."

Under modern conditions, and under the present and well recognized definitions of the effect of the words "bring in," it is sufficient if the lists are "filed" with the assessors, and

so recognized by Chief Justice Pattangall in *Terminal Company* v. *Portland,* 129 Me. 264. See Webster's New International Dictionary which gives the definitions "produce," "to convey," "to cause to come before a person or body for consideration," "to report to or to lay before a court."

All that the assessors require is that the lists be filed with or furnished to them in some manner at a time specified in their notice. With modern mail service and with the telephone it is a simple matter to notify the maker of a furnished list to come before the board to make oath, or to give further or other information. The taxpayer should be ready at any time to testify to the correctness of his list, but there is no present day need to personally bring it. Should the crippled person or the invalid be deprived of the benefit of the statute because he is unable to personally bring on some particular day? Then too, with our increased population it would be a practical impossibility in some cities or in some large towns for all the taxpayers to get into a municipal office on one day, to say nothing of opportunity on the part of the assessors to examine the lists furnished. The assessors should have and do have a reasonable time to examine the furnished lists. *Powell* v. *Old Town,* 108 Me. 532.

The Massachusetts Court recognizes that, under the similar statute in that Commonwealth, the list may be sent in by the taxpayer, and the assessors may notify him by letter of insufficiency, and that neglect to reply is considered a refusal to appear and to make oath. *Cody* v. *Spear,* 214 Mass. 241; *Dexter* v. *Beverly,* 249 Mass. 167; Volume 2, Annotated Laws of Massachusetts (1945), Page 303, Chapter 59, Section 29.

An examination of the case of *Inhabitants of Winslow* v. *County Commissioners,* 37 Me. 561, on which the Superior Court based its decision to dismiss the pending appeal, shows these facts: One Joseph Eaton, in the year 1850, sent in his list by a third person. Later, Eaton asked the asses-

sors for an abatement. The abatement was denied and he applied to the county commissioners. The county commissioners denied a motion to dismiss because the list was not personally brought in, and ordered abatement and reimbursement. On petition by the inhabitants of the town for *writ of certiorari,* alleging in the petition that the motion to dismiss should have been granted and that reimbursement should not have been ordered, the presiding judge refused to grant the writ. In overruling the exceptions because no "real injury" done, Judge Cutting says: "The case finds that the person applying for, and obtaining, an abatement, did not personally hand in his list, and no reason is offered or excuse made for such neglect. The true reason in some cases may be a willingness to avoid the oath, in which event the party delinquent throws himself upon the final judgment and discretion of the assessors. In this instance the county commissioners erred in making the abatement. But the case further discloses that no real injury has been done to the petitioners; for it is admitted that *such* a list was before the assessors, as they had notified to be produced, which was a true and perfect list, and it could not have been made more true and perfect, even by an oath."

In other words, this court, in the year 1854, stated that the taxpayer must personally bring in his list; but if the assessors received it by a third person and it was "true and perfect," there was no "real injury" and a *petition for certiorari* "must be dismissed."

The literal statement in the statute to the effect that the inhabitants must "bring in such list" or be barred of right to make application for abatement, may not have been changed through all the years, but the law and the interpretation of the law does not and must not stand still. It moves to meet the changing times and conditions. With the adoption of each revision of the statutes the legislature speaks as of the date of revision, and although certain words may convey a certain idea to an earlier generation, the changing

conditions make that idea inappropriate and inapplicable today. The legislature of a century ago meant the words as *then* understood, and intended them to meet the *then* existing conditions and circumstances. The legislature that adopted the statute revision of 1944 necessarily meant to convey an idea that would meet the needs and conditions of today.

We cannot subscribe to the interpretation contained in *Inhabitants of Winslow* v. *County Commissioners,* 37 Me. 561. The legislature of 1944 never intended that in these days the taxpayer must personally carry to the assessors his list in order to obtain the benefit of his right to an appeal. The taxpayer need only file such list with the assessors at the time appointed, and stand ready to make oath and give other information if required. The sending by registered mail so that the list is received by the assessors, as in the case at bar, is sufficient.

The opinion in the case of *Inhabitants of Winslow* v. *County Commissioners of Kennebec,* 37 Me. 561 is overruled.

*Exceptions sustained.*